UNIVERSAL ASSURORS LIFE
INSURANCE COMPANY,
Plaintiff,

Commerce Bank of St. Joseph,
N.A., Appellant,

v.

Gary HOLTSCLAW, Third–
Party Defendant,

Federal Deposit Insurance
Corporation, Appellee.

No. 92–2744.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1993.

Decided May 27, 1993.

Creath S. Thorne, St. Joseph, MO (Ronald S. Reed, Jr., on the brief), for appellant.

J. Scott Watson, Washington, DC, argued (Richard J. Osterman, Jr. and Ann S. Du-Ross, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

This appeal presents the question of the proper construction of an agreement entered into by the Federal Deposit Insurance Corporation ("FDIC") and the purchaser of assets of an insolvent bank. Commerce Bank of St. Joseph, N.A., ("Commerce") which purchased some of the assets and liabilities of First National Bank of St. Joseph, Missouri, ("First National") asserts that the FDIC has agreed to indemnify Commerce for any liability it may have in a suit brought by Universal Assurors Life Insurance Company ("Universal") against Commerce. The district court found that the FDIC had not assumed the potential liability and therefore granted the FDIC summary judgment. Commerce

appeals the district court's order, and we reverse.

## I

In December 1983, First National entered into a trust agreement with Universal and Great Missouri Life Insurance Company ("Great Missouri") that created a demand checking account into which Great Missouri would deposit funds. According to Universal's view of the trust agreement, those funds could only be withdrawn on the written demand of Universal.

In October 1985, First National was declared insolvent, and the FDIC was appointed receiver. Commerce then entered into a "purchase and assumption" agreement with the FDIC, pursuant to which Commerce acquired certain assets and assumed certain liabilities of the insolvent First National. One of the accounts transferred to Commerce was the demand checking account created in Great Missouri's name in December 1983. The signature card for the account named Great Missouri as the holder of the account and carried the signatures of Gary Holtsclaw and Jeff Daum. In the "remarks" section of the card was the notation "Trust Agreement—Bob Coil." For the purposes of this appeal, it is assumed that Commerce did not receive a copy of the trust agreement from the FDIC.[1]

In 1988, Commerce paid out all of the funds from the checking account in question—a total of $46,190—upon the demand of Gary Holtsclaw. Upon discovery of the funds' disbursal, Universal brought suit against Commerce alleging breach of fiduciary duty, breach of contract, and violation of provisions of the Uniform Commercial Code.

It was not until after the funds had been paid out that Commerce received a copy of the trust agreement from Universal.

Commerce subsequently filed a third-party complaint against the FDIC, alleging that the FDIC had agreed to indemnify Commerce for claims such as that by Universal. The FDIC moved to dismiss, arguing that the agreement on which Commerce relied expressly excluded liability for any action or inaction by Commerce after October 11, 1985—the date of the purchase—and that any liability to Universal resulted from the actions of Commerce in 1988. Because the FDIC relied on materials outside the pleadings, the district court treated its motion as one for summary judgment. Finding the express limitation on FDIC's liability unambiguous and controlling, the district court granted FDIC's motion and entered final judgment in the FDIC's favor. This appeal followed.

## II

■ To resolve this appeal, we must determine the proper construction of the agreement between the FDIC and Commerce. In relevant part, the indemnity agreement provides the following:

The [FDIC] will indemnify and hold [Commerce] harmless from and against the following:

. . . .

(5) Any and all claims whatsoever not covered by [the previous clauses] and (a) based upon any action or inaction by [First National], its directors, officers, or agents prior to [October 11, 1985,] or (b) based upon the execution and delivery of the

---

1. The district court indicated in its order that "nothing in the file or pleadings supports the allegation that either the FDIC or First National failed to record the trust documents or convey them to Commerce." *Universal Assurors Life Ins. Co. v. Commerce Bank*, No. 90–6116–CV–SJ–2, slip op. at 8 n. 3, 1992 WL 494970 (W.D.Mo. May 21, 1992). Though this finding did not control the district court's ruling, the statement is nonetheless incorrect. Commerce included with its response to the FDIC's motion an affidavit by William A. Carpenter, Chairman of the Board of Commerce Bank, in which he states that Commerce was first provided a copy of the trust agreement by Universal, that the agreement "was not previously part of any records in the possession of or made known to Commerce Bank," that Commerce "was never informed of the existence of this agreement" by the FDIC or First National, and that the agreement "was not part of the trust department business of the First National Bank at the time that the Commerce Bank assumed that business and has never been part of same." App. at 88. The FDIC supplied no counteraffidavit because it argues that this fact is not material to the scope of the indemnification agreement.

Agreement or the consummation of the transactions contemplated thereby. . . .

App. at 61. The indemnity agreement also included the following disclaimer: "[E]xcept as expressly provided in this Indemnity Agreement, the [FDIC] shall not be liable to [Commerce] for any action or inaction on the part of [Commerce] after [October 11, 1985]." The purchase and assumption agreement specifically provided that the FDIC would transfer to Commerce "[s]ignature cards, orders, and contracts between [First National] and its depositors, and records of similar character." App. at 45.

The FDIC's proposed interpretation of the indemnity agreement is rather narrow, turning exclusively on the disclaimer of all liability that arises from actions by Commerce after October 11, 1985. The FDIC argues that any liability to Universal arises from actions by Commerce in paying out the funds in question. In furthering its argument, the FDIC notes the existence of the remarks on the signature card, but does not rely on them. Were there no such remarks, any potential liability would still fall outside of the indemnity agreement as interpreted by the FDIC because the liability would arise from Commerce's actions of paying out the funds after the date of the purchase. The issues of whether First National failed properly to record the trust agreement and whether the FDIC failed to provide the trust agreement to Commerce are, under the FDIC's view, irrelevant, for neither gives rise to the claim by Universal and both therefore fall outside the scope of the indemnity agreement. The FDIC agrees that any breach of a duty of care in delivering the trust agreement to Commerce might give rise to direct liability under the Federal Tort Claims Act, but asserts that any such breach would be irrelevant to the scope of the indemnity agreement.

Commerce argues for a broader interpretation. It argues that any liability to Universal is "based," to use the language of the indemnity agreement, both on First National's inaction prior to October 11, 1985, and on the FDIC's failure to provide Commerce with the trust agreement as contemplated by the purchase and assumption agreement.

Its argument is not, as the FDIC asserts, that no liability could have arisen "but for" First National having created the account in the first place, but that no liability could have arisen but for First National's failure properly to record the trust agreement and the FDIC's failure to provide Commerce with the same agreement.

Commerce necessarily reads the disclaimer of liability for action or inaction by Commerce more narrowly than does the FDIC, relying in part on the clause "except as expressly provided in this Indemnity Agreement." It argues that the indemnity sought in this case is expressly provided in section 2(5), and is therefore not subject to the disclaimer. Under its reading, had the FDIC provided a properly recorded trust agreement to Commerce and had Commerce nonetheless paid out the funds without Universal's approval, any liability would be solely the result of action (or inaction) by Commerce, and the FDIC would not be obligated to indemnify. But in this case, the actions by Commerce after October 11, 1985, are the result of inaction of First National and the FDIC for which indemnification is expressly provided.

Our reading of the indemnity agreement accords with that of Commerce. We first read the agreement in light of the hypothetical situation raised in oral argument in which the trust agreement was not provided to Commerce *and* the signature card did not include any remarks. Under those circumstances, it is our view that the FDIC would be obligated to indemnify Commerce for any liability to Universal because the potential liability would be based on First National's failure properly to record the trust agreement and/or the FDIC's failure to provide the trust agreement to Commerce. Such liability falls within sections 2(5)(a) and 2(5)(b) of the indemnity agreement and does not arise simply from the actions of Commerce in paying out the funds.

The district court stated that the interpretation proposed by Commerce "serve[s] to render the stated time limitation meaningless and obligate[s] the FDIC to indemnify Commerce in perpetuity." *Universal Assurors Life Ins. Co. v. Commerce Bank,* No. 90–

6116–CV–SJ–2, slip op. at 8 (W.D.Mo. May 21, 1992). We disagree. The time limitation in question simply precludes indemnification for liability that arises from actions by Commerce. Commerce would not be indemnified, for example, if it had been provided with all the proper documentation but nonetheless paid out funds from the trust account without Universal's approval after the date in question. Likewise, the FDIC would not be obligated to indemnify Commerce anytime it might be sued over its handling of one of the purchased accounts. The time limitation is not intended as a termination point for all of the indemnification provided, and the agreement contains no such ending date. The FDIC does appear to be obligated in perpetuity to indemnify Commerce for the liability that falls within section 2(1)–(6), but that fact cannot support our reading the time limitation in one clause of the agreement as generally applicable when it clearly applies only to liability predicated on actions by Commerce that would not otherwise be covered.

█ Moving from the confines of our hypothetical to the case before us, we must consider the significance of the remarks on the signature card. The FDIC argues that regardless of the scope of the indemnity in our hypothetical situation, liability in this case turns on the exercise of independent business judgment by Commerce in ignoring the notation "Trust Agreement—Bob Coil." FDIC further argues that such liability is expressly excluded from the indemnity agreement. Commerce, of course, argues to the contrary. Though we agree with the FDIC that a jury could find both that the notation put Commerce on notice of the existence of the trust agreement and that Commerce should reasonably have investigated the notation, we believe that resolution of this issue through summary judgment is inappropriate at this stage in the proceeding. On the record before us, it cannot be said that the FDIC "is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c), because this issue could "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### III

Having found that the FDIC was not entitled to summary judgment on the record before us, we reverse the order of the district court and remand for further proceedings consistent with this opinion.